# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | | |
|---|---|---|
| GEORGE PERALES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:09-CV-138 |
| | ) | |
| OFFICER BOWLIN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the court *sua sponte* pursuant to 28 U.S.C. section 1915A. For the reasons set forth below, the court allows the Plaintiff to proceed against Defendant C. Daniels, in her individual capacity, for damages on his claim that she used excessive and unnecessary force on him during a pat-search while he was confined at the Elkhart County Jail, allows him to proceed against Defendant Bowlin on his claim that she "fondled" him during a pat-down search, and **DISMISSES**, pursuant to section 1915A, all other claims and Defendants.

BACKGROUND

George Perales is a state prisoner currently confined at the Miami Correctional Facility. His complaint deals with events that occurred while he was confined at the Elkhart County Jail. The Defendants are Elkhart Jail officials Bowlin, Ormaza, C. Daniels, Sergeant Bigler, Lieutenant Naves, Detective Mock, and Tina Phieffer. Perales alleges that the Defendants violated rights

protected by the United States Constitution's First, Eighth, and Fourteenth Amendments, and also violated Indiana statutes.

DISCUSSION

Pursuant to 28 U.S.C. section 1915A(a), the court shall review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." Perales is a prisoner as defined in section 1915A(c) and the defendants he seeks redress from are government officials.

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint that does not state a claim upon which relief can be granted. The court applies the same standard under § 1915A as when addressing a motion under Rule 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006).

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks, ellipsis, citations and footnote omitted).

2

> While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant set out in detail the facts upon which he bases his claim, Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

*Id.* at n.3(quotation marks and citation omitted). Furthermore, "on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 555, *citing Papasan v. Allain*, 478 U.S. 265, 286 (1986) (quotation marks omitted).

State Law Claims

The Plaintiff brings this action pursuant to 42 United States Code section 1983, which provides a cause of action to redress the violation of federally secured rights by a person acting under color of state law. *Burrell v. City of Mattoon*, 378 F.3d 642 (7th Cir. 2004). To state a claim under section 1983, a plaintiff must allege violation of rights secured by the Constitution and laws of the United States, and must show that a person acting under color of state law committed the alleged deprivation. *West v. Atkins*, 487 U.S. 42 (1988). The first inquiry in every section 1983 case is whether the plaintiff has been deprived of a right secured by the Constitution or laws of the United States. *Baker v. McCollan*, 443 U.S. 137, 140 (1979). The Plaintiffs claims that the Defendants'

actions violated Indiana statutory provisions state no claim upon which relief can be granted in a claim brought under section 1983.

Federal Law Claims

Perales alleges that the Defendants' actions violated his First, Eighth, and Fourteenth Amendment rights. He also alleges that Defendants acted in retaliation for his having complained about his treatment at the jail and having filing complaints and grievances.

Perales alleges that some of the events he complains of occurred when he first arrived at the jail as a pre-trial detainee and that others occurred after he was convicted and had begun serving his sentence. The Eighth Amendment protects convicted prisoners from cruel and unusual punishments while the rights of pre-trial detainees are derived from the Fourteenth Amendment's Due Process Clause. *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979). But "[a]n act or practice that violates the eighth amendment also violates the due process rights of pretrial detainees." *Martin v. Tyson*, 845 F.2d 1451, 1457 (7th Cir. 1988), *cert. denied*, 488 U.S. 863 (1988).

A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2)

subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294 (1991).

The complaint lists seven defendants and makes the same general allegations against each of them. The Plaintiff states the specific facts upon which he bases his claims against each defendant in a separate statement of chronological events which he attached to his complaint.

Claims Against Officer Ormaza

Perales alleges that on November 13, 2007, he was booked into the jail by Officer Ormaza, a female custody officer. Even though Perales believes that jail policy precludes female officers from "dressing-out" male offenders, Officer Ormaza asked him to take off his civilian clothing and then gave him his prison uniform to put on. (DE 1-2 at p. 1). Perales states that "I had not yet been convicted or sentenced of any crime and do not believe I should have been made to strip naked and stared at under any circumstances, but especialy (sic) by the opposite gender." (*Id.*).

That Officer Ormaza may have violated jail policy by "dressing-out" the Plaintiff states no section 1983 claim upon which relief can be granted. His claim that Officer Ormaza saw him while he was undressed also states no Constitutional claim.

> Guards take control of where and how prisoners live; they do not retain any right of seclusion or secrecy against their captors, who are entitled to watch and regulate every detail of daily life. After *Wolfish* and *Hudson*, monitoring of naked prisoners is not only permissible . . . but also sometimes mandatory.
>
> * * *
>
> Surveillance of prisoners is essential, as *Wolfish* establishes. Observation of cells, showers, and toilets is less intrusive than the body-cavity inspections Wolfish held permissible. Guards do the surveillance. Male guards and female guards too . . . .
>
> * * *
>
> [F]emale guards . . . see male prisoners in states of undress. Frequently. Deliberately. Otherwise they are not doing their jobs.

*Johnson v. Phelan*, 69 F.3d 144, 146 (7th Cir. 1995), *cert. denied*, *sub nom., Johnson v. Sheahan*, 519 U.S. 1006 (1996).

Perales complained to jail officials about Officer Ormaza's conduct, and he later says he:

> observed Officer Ormaza and another female officer pointing towards me and talking to eachother. I could not hear their words, but assumed that they were speaking about me and that I was the one who filed the claim against her.
>
> (DE 1-2 at p. 7).

Even assuming *arguendo* that Officer Ormaza did point toward Pareales and talk to another officer about the complaint he made against her, it states no Constitutional claim upon which relief can be granted. None of the claims against Officer Ormaza violate the Plaintiff's First, Eighth, or Fourteenth Amendment rights, and because the "dressing-out" took place when Perales first arrived at the jail, it could not have been in retaliation for his having filed grievances or complaints after he arrived at the jail.

6

Claims Against Officer C. Daniels

Perales alleges that on September 14, 2008, while returning to his cell from church service, three female officers conducted "Pat-Down searches" of the returning inmates. He states that he was searched by Officer Daniels, who "did not seem to be in a very good mood." (DE 1-2 at p. 9). He alleges that "[w]hile Officer C. Daniels was conducting the search, she struck inmate Irizarry and myself in the groin, with her hand in a 'chopping Motion' to my right testicle causing immediate pain, discomfort and nausea." (*Id.*). Perales states that he was in pain and a nurse conducted a physical examination and gave him an ice packet. He states that he remained in pain for a week and a half and "managed through the pain with the use of Tylenol and Asperin. (DE 1-2 at p. 11).

Generally, the Constitution does not preclude jail or prison policies allowing officers to conduct pat-down searches of opposite sex prisoners, *Timm v. Gunter*, 917 F.2d 1093, 1099-1101 (8th Cir. 1990), *cert. denied*, 501 U.S. 1209 (1991). Nevertheless, where "the gravamen of the inmates' charge . . . is that the cross-gender clothed body searches inflict great pain and suffering. The unnecessary and wanton infliction of pain upon prisoners constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Jordan v. Gardner*, 986 F.2d 1521, 1524 (9th Cir. 1993). Perales alleges that Officer Daniels's conduct of this particular pat-down strip inflicted unnecessary and wanton pain on him.

7

A correctional officer's use of physical force against an inmate may give rise to an Eighth Amendment claim. *Hudson v. McMillian*, 503 U.S. 1 (1992); *Whitley v. Albers*, 475 U.S. 312 (1986). In evaluating whether an officer used excessive force, the court is to consider factors such as the need for the application of force, the relationship between the need and the amount of force used, and the extent of injury inflicted. *Whitley*, 475 U.S. at 321-22. "Whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7.

"Fed. R. Civ. P. 8 establishes a system of notice pleading," and a claim may not be dismissed at the pleadings stage "unless no relief could be granted 'under any set of facts that could be proved consistent with the allegations.'" *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998)(quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). Giving the Plaintiff the benefit of the inferences to which he is entitled at the pleadings stage, this Court cannot say that he can prove no set of facts consistent with his excessive use of force claim against Officer Daniels under the standards set forth in *Hudson* and *Whitley*. But Perales' allegation against Officer Daniels states no First or Fourteenth Amendment claim.

Perales alleges that Officer Daniels acted against him in retaliation for having filed grievances and complaints. To establish a retaliation claim, the plaintiff must establish first that he engaged in a constitutionally protected activity, and second that engaging in that activity was a substantial or motivating fact in the defendant's actions against him. *Mt. Healthy City School District v. Doyle*, 429 U.S. 274 (1977).

Retaliation against a prisoner for filing a grievance or complaining about treatment by officials may state a claim upon which relief can be granted. *Dixon v. Brown*, 38 F.3d 379 (8th Cir. 1994); *Sprouse v. Babcock*, 870 F.2d 450 (8th Cir. 1989). But to state a claim for retaliatory treatment, a complaint must allege a chronology of events from which retaliation may be inferred. *Black v. Lane,* 22 F.3d 1395, 1399 (7th Cir.1994); *Geder v. Godinez*, 875 F.Supp. 1334, 1338 (N.D. Ill. 1995). This complaint does not allege a chronology of events from which it can be inferred that Officer Daniels acted as Perales alleges she did in retaliation for anything Perales had done instead of because she was not "in a very good mood" on the day she conducted the search. (DE 1-2 at p. 9).

Claims Against Officer Bowlin

Perales alleges that on August 8, 2008, the jail staff conducted a shakedown of his cell. He states that female officers conducted the pat-down portion of the search and that Officer

Bowlin searched him twice. He alleges that during the search Officer Bowlin "fondled" him, and that he became aroused as a result of this search. (DE 1-2, p. 5).

That a female officer touches a male prisoner during a pat-down search, by itself, states no claim upon which relief can be granted even if the touching is in the groin area. *See Timm*, 917 F.2d at 1099-1101. But where the touching goes beyond that necessary to search for weapons or other contraband, it may state a claim upon which relief can be granted.

The Eighth Amendment prohibits unnecessary and wanton infliction of pain, forbidding punishment that is "so totally without penological justification that it results in the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 183 (1976). To state an Eighth Amendment claim, in the context of a pat-down search, Perales must show the search in question was not merely a legitimate search, but rather a search conducted in a harassing manner intended to humiliate and inflict psychological pain.

> In the context of bodily searches performed upon those incarcerated in our prison system, only those searches that are "maliciously motivated, unrelated to institutional security, and hence 'totally without penological justification'" are considered unconstitutional. *Meriwether*, 821 F.2d at 418 (quoting *Rhodes*, 452 U.S. at 346, 101 S.Ct. 2392); see also *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir.2003). In other words, the search must amount to " 'calculated harassment unrelated to prison needs,' " *Meriwether*, 821 F.2d at 418 (quoting *Hudson v. Palmer*, 468 U.S. 517, 530, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)), with the intent to humiliate and

> inflict psychological pain, *Fillmore v. Page*, 358 F.3d
> 496, 505 (7th Cir.2004) (citing *Calhoun*, 319 F.3d at
> 939).

*Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004).

Giving the Plaintiff the benefit of the inferences to which he is entitled at the pleadings stage, this Court cannot say that he can prove no set of set of facts consistent with his claim that this search by Officer Bowlin went beyond being a legitimate search and was conducted in a harassing manner intended to humiliate him and inflict psychological pain.

His allegation against Officer Bowlin, however, states no First or Fourteenth Amendment claim. Moreover, the facts set forth by the Plaintiff do not suggest a chronology from which retaliatory intent can be inferred.

Claims Against Lieutenant Naves

Perales states that Lieutenant Naves is a black, male custody officer. Perales alleges that when he first arrived at the jail he was housed temporarily in the gym and that on one occasion "as the group of inmates I was in was being hand-cuffed, zip-tied and shackled . . . I heard Lt. Naves say . . . "if anyone acts up, fuck them up . . . No paper-work tonight." (DE 1-2, p. 1). He does not allege that he or any other inmate acted up or was actually abused by officers on that occasion. He merely states that he and the other inmates did not deserve "to be subjected to such rude and debasing actions from these public servants." (DE 1-2, p. 2).

On another occasion, Perales alleges that:

> While Lt. Naves (African-American) was doing "walk-throughs", he spoke to the Hispanic and Caucasion inmates in a rude and belittling manner, but when he spoke to members of his own Ethnic Group, Lt. Naves's demeanor would change for the better, . . .. Seeing this, I chose not to speak with Lt. Naves at that time.

(DE 1-2, p. 3).

Finally, Perales alleges that inmates sometimes had to wear clothing that was too small for them though he does not allege that he was one of these ill-dressed inmates. He alleges that "Lt. Naves and other Staff/Guards made coinciding remarks to this, and thought it was humorous and funny. This behavior and actions went on for quite some time." (DE 1-2, p. 4). Finally, when Perales complained to Lt. Naves about female correctional officers, he alleges that Lt. Naves refused to help him and belittled him by telling him if "you feel you are in danger or are afraid for your life, then I can put you in segregation." (DE 1-2, p. 8).

The Plaintiff's claims against Lt. Naves are that he made abusive, derogatory, or mean verbal statements to Perales and other inmates. There is "a *de minimis* level of imposition with which the Constitution is not concerned," *Ingraham v. Wright*, 430 U.S. 651, 674 (1977), and verbal abuse and harassment are not sufficient to state a claim under section 1983. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987). Lt. Naves may have been unprofessional in making comments such as those described above, but his actions did not

violate any Constitutional provision nor is there any suggestion of a chronology of events from which it can be inferred that Lt. Naves retaliated against Perales for exercising his Constitutional rights.

Claims Against Detective Mock

In his narrative, the Plaintiff asserts that when he was away from the jail at the Goshen City Court, Bailiff Franks, a non-defendant, did several objectionable things. He states that when he returned to the jail he "reported Bailiff Frank[']s actions to the jail's Correctional Investigator, Detective Mock, on the 'Kiosk Computer System.'" (DE 1-2, p. 2). He alleges that Detective Mock responded that he did not understand what Perales was trying to say and that when Perales attempted to explain in more detail, Detective Mock's reply was, "What do you suggest that we do?"(DE 1-2, p. 3). Perales replied that he "wanted some kind of action taken," but he "never heard anything back from Det. Mock." (*Id.*).

Perales also asserts that after the incident with Officer Bowlin he filed another grievance that Detective Mock investigated. (DE 1-2, pp. 6-7). He states that Detective Mock did not resolve the grievance in his favor and told him "It's going to [be] hard to prove it . . . Good luck with your lawsuit." (DE 1-2, p. 7).

Perales does not allege that Detective Mock did anything directly to violate his federally protected rights. He alleges only

that Detective Mock did not properly handle and investigate his grievances.

That Detective Mock may have ignored the Plaintiff's grievances or ruled against him states no claim upon which relief can be granted. "The Constitution does not require that a prison or jail provide a grievance procedure or that government employees respond to grievances." *Rowe v. Davis*, 373 F.Supp.2d 822, 826 (N.D. Ind. 2005). That a jail official ignores or denies a prisoner's grievance does not violate the Fourteenth Amendment's due process clause. *Wilson v. VanNatta*, 291 F.Supp.2d 811, 819 (N.D.Ind. 2003).

"The First Amendment right to petition the government for a redress of grievances protects a person's right to complain to the government that the government has wronged him, but it does not require that a government official respond to the grievance." *Jones v. Brown*, 300 F.Supp.2d 674, 679 (N.D.Ind. 2003). Denying a grievance or even failure to investigate a prisoner's complaints does not make an official liable for damages under sectuin 1983. *George v. Smith*, 507 F.3d. 605, 609 (7th Cir. 2007) (citations omitted).

Nothing in the Plaintiff's narrative states a First, Eighth, or Fourteenth Amendment claim against Detective Mock. Nor is there any suggestion of a chronology of events from which it can be inferred that Detective Mock retaliated against Perales for exercising his Constitutional rights.

Claims Against Sergeant Bigler

The Plaintiff states that custody officers at the jail check the inmates at night. He asserts that male officers generally "had NO PROBLEM with tapping on the bunks to ensure the inmates were there . . .," but that unnamed, non-defendant, female guards "were adamant" about touching him or pulling his covers off when they made their rounds. (DE 1-2, p. 8). Perales filed another grievance through the Kiosk to the shift officer. Sergeant Bigler, the first shift officer in charge responded that the officers did nothing wrong.

Even assuming *arguendo* that the unnamed female custody officers' actions violated Perales's federally protected rights, he has not stated a claim against Sergeant Bigler. The doctrine of *respondeat superior*, under which a supervisor may be held liable for an employee's actions, has no application to section 1983 actions. *Zimmerman v. Tribble*, 226 F.3d 568 (7th Cir. 2000); *Moore v. State of Indiana*, 999 F.2d 1125, 1129 (7th Cir. 1993); *Adams v. Pate*, 445 F.2d 105, 107 (7th Cir. 1971). Denying a grievance does not make an official liable for damages under section 1983. *George*, 507 F.3d. at 609.

Nothing in the Plaintiff's narrative states a First, Eighth, or Fourteenth Amendment claim against Sergeant Bigler. Nor is there any suggestion of a chronology of events from which it can be inferred that Sergeant Bigler retaliated against Perales for exercising his Constitutional rights.

Claims Against Tina Pfieffer

At some point during his stay at the jail, Pearles states that he "sent a request to Tina Phieffer in the Administration Department, asking her for the address of the Indiana Department of Corrections Central Office to file a complaint" because the jail "was not ever responding to requests and grievances and because staff conduct was not improving." (DE 1-2, p. 4). He asserts that she wrote back asking "what do you mean disciplinary actions?" (*Id.*). Although defendant Phieffer did not provide him with the address, he was able to obtain the address from another inmate. (*Id.*).

An inmate has no Constitutional right to file grievances at the institution in which he is confined, *Rowe*, 373 F.Supp.2d at 826, so he certainly has no Constitutionally protected right to file grievances with the State Department of Correction about events occurring at a jail. The First Amendment's right to redress of grievances is satisfied by the availability of a judicial remedy. *Azeez v. DeRobertis*, 568 F.Supp. 8, 10 (N.D. Ill. 1982).

Nothing in the Plaintiff's narrative states a First, Eighth, or Fourteenth Amendment claim against Defendant Phieffer. Nor is there any suggestion of a chronology of events from which it can be inferred that she retaliated against Perales for exercising his Constitutional rights.

CONCLUSION

For the foregoing reasons, this Court:

(1) **GRANTS** the Plaintiff leave to proceed against Defendant C. Daniels in her individual capacity for damages on his claim that she used excessive and unnecessary force on him during a pat-search while he was confined at the Elkhart County Jail, and allows him to proceed against Officer Bowlin in her individual capacity for damages on his claim that she "fondled" him during a pat-down search;

(2) **DISMISSES**, pursuant to 28 U.S.C. section 1915A, all other claims and **DISMISSES** Defendants Ormaza, Bigler, Naves, Mock, and Phieffer;

(3) Pursuant to 42 U.S.C. section 1997e(g)(2), **ORDERS** that Defendants Daniels and Bowlin respond to the complaint as provided for in the Federal Rules of Civil Procedure; and

(4) **DIRECTS** the marshals service to effect service of process on Defendants Daniels and Bowlin on the Plaintiff's behalf, and **DIRECTS** the Clerk's Office to ensure that a copy of this order is served on them along with the summons and complaint.

**DATED: July 23, 2009**  /S/RUDY LOZANO, Judge
United States District Court